UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN HOUSEHOLD PRODUCTS, INC., an Alabama Corporation; AMERICAN CROWN, INC., an Alabama Corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV 01-BU-385-S |
| EVANS MANUFACTURING, INC., a California Corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

**ENTERED**
**ENTERED**
APR 0 4 2001

## Memorandum Opinion

Now before the Court in the above-styled action are three pending motions. The first is a motion, contained within the body of the complaint filed on February 9, 2001 by Plaintiffs American Household Products, Inc. ("AHP") and American Crown, Inc. ("Crown"), seeking a preliminary injunction. (Doc. 1). In particular, that motion seeks an order enjoining Defendant Evans Manufacturing, Inc. ("Evans") from bringing certain patent infringement claims against AHP, Crown, or any of their customers, dealers, or their distributors. On March 26, 2001, Plaintiffs filed another motion seeking similar relief, but which was specifically

directed at precluding Evans from amending its complaint to add certain infringement claims in action now pending in the United States District Court for the Central District of California, styled <u>Sheldon Krunger, et al. v. William Hooton, et al.</u>, Case No. SACV00-1177-AHS (the "California Action").   (Doc. 9). In between such filings, on March 9, 2001, Evans filed a motion to dismiss this action, or in the alternative, to stay all proceedings pending the outcome of the California Action. (Doc. 7).  After careful consideration of the materials submitted by the parties, the Court concludes that Evans's motion to dismiss is due to be GRANTED.   As this action will be DISMISSED without prejudice, AHP and Crown's motions seeking injunctive relief are MOOT.

## I. BACKGROUND

Evans, a California corporation with its principal place of business in Garden Grove, California, is the exclusive licensee of United States Patent No. 6,058,550 ("the '550 patent"), which covers an invention known as the "Video Display Screen Cleaner," a hand-held tool used to remove dust and static charge from video display screens.  This patent was issued May 9, 2000 pursuant to an application filed March 15, 1999.  On November 29, 2000, Evans and the inventors listed in the '550 patent (the "California Action Plaintiffs") filed the California Action, alleging that various defendants (the "California Action Defendants"), including AHP and Crown, both Alabama corporations, had manufactured, marketed, and sold products that infringed upon the '550 patent.[1]  Specifically, the California Action Plaintiffs alleged that Crown sold an allegedly infringing product called the "Standard Computer

---

[1]The California Action Plaintiffs also allege in their complaint that the California Action Defendants engaged in unfair or fraudulent business practices, in violation of both the Lanham Act, 15 U.S.C. § 1125(a), and § 17200 of the California Business and Professions Code.

Whisker," California Action Complaint, Defendant's Ex. 1, at ¶¶ 19-22, while AHP sold an allegedly infringing product called the "Screen Clean," id. at ¶¶ 27-29.

On January 11, 2001, Crown and AHP filed an answer to the complaint in the California Action.  In that pleading, Crown and AHP dispute the existence of personal jurisdiction and assert that venue was improperly laid, and, on the merits, they also deny the validity of, and their infringement of, the '550 patent.  Simultaneous with the filing of their answer, Crown and AHP filed a motion for severance and transfer of the claims against them to the United States District Court for either the Northern or Southern District of Alabama.  Said motion for severance and transfer is currently set for a hearing in the California court on April 23, 2001.

On February 6, 2001, the United States Patent Office issued another patent relating to the Video Display Screen Cleaner, United States Patent No. 6,182,320 ("the '320 patent").  This second patent was issued pursuant to a continuation application which was filed on February 1, 2000, while the application that resulted in the '550 patent was still pending.[2]  Evans asserts that the '320 patent "contain[s] new and expanded claims . . . but [is] premised on the same subject matter of the '550 patent," and that the "purpose of the continuation application was to obtain additional claims on the same invention to prevent competitors from 'designing around' the '550 patent."  Brief in Support of Defendant's Motion to Dismiss or, in the Alternative, to Stay All Proceedings ("Evans's Brief") at 4, citing Krongold

---

[2]A "continuation" application is one that is filed during the pendency of an application previously filed by the same inventor, called the original or "parent" application, and which discloses and claims only subject matter disclosed and claimed in the original or parent application.  See Manual of Patent Examining Procedure § 201.07; Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555-56 (Fed. Cir. 1994); 35 U.S.C. § 120.

Decl., ¶ 5.

About one month prior to the issuance of the '320 patent, counsel for California Action Plaintiffs indicated to opposing counsel that he intended to amend the complaint in that action to include claims derived from the continuation application and the issuance of the '320 patent therefrom. Likewise, in a joint report dated February 6, 2001 that was filed in the California Action, counsel for the California Action Plaintiffs stated their position that products sold by the defendants in that action infringed not only upon the '550 patent, but the '320 patent as well. See Krongold Decl., ¶ 6-7 and Ex. 3 thereto. Finally, in a letter dated March 1, 2001, counsel for the California Action Plaintiffs notified opposing counsel that he intended to file an amended complaint in the California Action to include claims based on both the '550 and '320 patents, enclosing a copy of a proposed amended complaint. See Evans's Ex. 6. He further indicated, however, that he and his clients were "still analyzing whether additional defendants should be added . . . [and that] a final determination will be made within the next two weeks. Id. Nonetheless, according to the materials now before this Court, it appears that the California Action Plaintiffs have not, at least as of March 23, 2001, amended their complaint in that action to include claims alleging infringement of the '320 patent, nor have they filed for leave to do so. See AHP & Crown's Ex. 14 (Docket Sheet from Pacer Report in the California Action).

On February 9, 2001, three days after the '320 patent was officially issued, AHP and Crown filed the instant action against Evans in this Court (the "instant action" or the "Alabama Action"). AHP and Crown acknowledge that since the issuance of the '320 patent, they have made and/or offered for sale from within

Alabama certain video display screen cleaners called "Screen Sweeps" and "Screen Whiskers," shipping such products from their production facilities within Alabama. Alabama Action Complaint at ¶ 6. Alleging that Evans has threatened to sue them for the infringement of the '320 patent, id. at ¶¶ 8-9, AHP and Crown seek a declaratory judgment that the '320 patent is invalid, that AHP and Crown have not infringed upon it, and that Evans is estopped to claim a construction of the '320 patent that would cover any product manufactured or sold by AHP and Crown. Id. at ¶¶ 10-12.  AHP and Crown further assert that Evans has "so misused the patent in suit and has so used it in violation of the antitrust laws as to render it unenforceable." Id. at ¶ 13.

AHP and Crown have moved this Court to issue an order enjoining Evans from amending its complaint in the California Action to include claims against AHP and Crown or any of their customers based on the alleged infringement of the '320 patent.  Conversely, Evans has moved the Court to dismiss or stay the instant action pending the outcome of the California Action.  The Court now turns to address the arguments underlying these motions.

## II. CONTENTIONS & ANALYSIS

The issues before the Court are: (1) whether AHP and Crown's declaratory judgment action in this Court should be dismissed or stayed pending a resolution of the California Action and, if not, (2) whether Evans should be enjoined from prosecuting claims for infringement based on the '320 patent, in the California forum or elsewhere.  As a threshold matter, the Court recognizes that subject matter jurisdiction over AHP and Crown's claims for a declaratory judgment as to the validity and non-infringement of the '320 patent is founded upon 28 U.S.C. §

1338(a).[3]  See, e.g., C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983); Geni-Chlor Intern., Inc. v. Multisonics Development Corp., 580 F.2d 981, 984 (9th Cir. 1978). Therefore, exclusive appellate jurisdiction from a final decision in this case rests with the United States Court of Appeals for the Federal Circuit.  See 28 U.S.C. § 1295(a)(1); Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 807 (1988); United Technologies Corp. v. Heico, 60 F.Supp. 2d 1306, 1307 n.2 (S.D. Fla. 1999).  This raises a question as to what law and precedents are controlling with respect to the issues presented by the parties' motions.

This Court is, of course, ordinarily bound by the decisions of the United States Court of Appeals for the Eleventh Circuit, to which an appeal from this Court lies in the vast majority of cases.  However, because an appeal in the instant case would lie only in the Court of Appeals for the  Federal Circuit, this Court applies the law that would be applied by that court. See, e.g., Maxwell Chase Technologies, L.L.C. v. KMB Produce, Inc., 79 F.Supp.2d 1364, 1367 (N.D. Ga. 1999); Heico, 60 F.Supp.2d at 1307 n.2. With regard to many issues, this creates no conflict at all, as the Federal Circuit generally applies the law of the regional circuit court to which a district court appeal normally lies.  Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001).  But if "the issue pertains to or is unique to patent law," the Federal Circuit will apply its own law to both substantive and procedural issues "intimately involved in the substance of enforcement of the patent right." Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855-56 (Fed. Cir. 1999).  The pending motions now before the Court implicate such unique, patent-

---

[3]28 U.S.C. § 1338(a) provides in pertinent part that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ."

related issues, as the Federal Circuit has indicated that it applies its own law when determining the proper relationship between a pending infringement action and another suit seeking a declaration of rights relating to the validity or non-infringement of a patent. See Serco Services Co. v. Kelley Co., 51 F.3d 1037, 1038 (Fed. Cir. 1995); Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993), abrogated on other grounds, Wilton v. Seven Falls Co., 515 U.S. 277, 288-89 (1995).

When there is an actual controversy for purposes of Article III and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance a declaratory action is not subject to dismissal. Genentech, 998 F.2d at 937. However, even if a case presents an actual controversy sufficient to confer jurisdiction,[4] there is no absolute right to a declaratory judgment, as 28 U.S.C. § 2201(a)[5] of the Declaratory Judgments Act specifically entrusts courts with the discretion to hear or not hear declaratory suits depending on the circumstances. Serco, 51 F.3d at 1039 (citing Minnesota Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991). See also Wilton, 515 U.S. at 286-88. Whether to hear a declaratory judgment action is a matter

_____

[4]It is clear that an actual controversy exists in the instant declaratory judgment action, as there is no dispute that Evans has charged AHP and Crown with infringement of the '320 patent. See, e.g., Genetech, 998 F.2d 936-37.

[5]28 U.S.C. § 2201(a) provides in pertinent part as follows:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

committed to the sound discretion of the district court. See <u>Wilton</u>, 515 U.S. 288-90; <u>Fina Research, S.A. v. Baroid Ltd.</u>, 141 F.3d 1479, 1481 (Fed. Cir. 1998); <u>Old Republic Union Ins. Co. v. Tillis Trucking Co.</u>, 124 F.3d 1258, 1260 (11th Cir. 1997).

It is well established that where a patentee files an infringement action against a manufacturer in one forum, and that manufacturer has filed a separate suit against the patentee in another forum seeking a declaratory judgment that the same patent is invalid and/or has not been infringed, the general rule is that the first filed action is given preference. See <u>Genentech</u>, 998 F.2d at 937-38; <u>Kahn v. General Motors Corp.</u>, 889 F.2d 1078, 1081 (Fed. Cir. 1989). This is true regardless of whether the first-filed action is a declaratory judgment action. <u>Genentech</u>, 998 F.2d at 937-38. Thus, the Supreme Court explained in <u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 185 (1952), that if a manufacturer files a declaratory judgment suit first, subsequent infringement actions by the patentee against the manufacturer can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit. Conversely, a district court may, in order to avoid duplicative litigation, decline to exercise jurisdiction over a declaratory judgment action where an infringement action involving the same parties and patents has already been filed in another federal district court. See <u>Pacesetter Systems, Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 94-96 (9th Cir. 1982) (cited with approval in <u>Hologic, Inc. v. Lunar Corp.</u>, 64 F.3d 678 (table), 1995 WL 501958, **2 (Fed. Cir. 1995)). See also <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." (citing <u>Kerotest</u>)).

However, "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation does not counsel rigid mechanical solutions . . . ." Kerotest, 342 U.S. at 184.  While a court may not simply defer to a later filed action raising the same issues and subject matter, broader equitable considerations may moderate against application of the first filing rule in a given case.  See Genentech, 998 F.2d at 938.  The Federal Circuit has explained as follows:

> [T]he trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.  There must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest.

Id. (citations omitted).

Here, both sides acknowledge the first filing rule.  Indeed, they both stress that this case requires a straightforward application of the rule, although they disagree entirely as to which side is entitled to the preference generally afforded the first-filed action.  Evans characterizes AHP and Crown's filing of the instant declaratory judgment action as a "textbook violation of the . . . rule against duplicative litigation" since Evans had filed a prior claim for patent infringement in the California Action.  Evans's Brief at 1.  Therefore, Evans asserts that based on Kerotest and Pacesetter, this case should be dismissed or stayed pending the outcome of that first-filed action.  AHP and Crown, on the other hand, concede that while the California Action is indeed the first filed with respect to the validity and enforceability of the '550 patent, they claim, also citing Kerotest and Pacesetter,

that the first filing rule compels this Court to enjoin Evans from amending its complaint in that action because the instant action is the first-filed action with respect to the validity and enforceability of the '320 patent. However, this case cannot be as easily pigeonholed as either side would have it.

Evans's line of argument greatly oversimplifies the issues. In a true "textbook" case for the first filing rule, the same parties would be involved in the competing infringement and declaratory judgment actions and the questions raised would be "identical," or virtually so, with "the central questions in each [action] [being] the validity and enforceability of [the same] specific patents," as was true in Pacesetter itself. See 678 F.2d at 95. By contrast, the face of the pleadings in the competing actions here reveal that, while the same parties are present, the validity and enforceability of at least nominally different patents are at issue: the '550 patent in California and the '320 patent here. AHP and Crown have further asserted that only certain of its discontinued products might potentially be found to infringe upon the '550 patent, while only "later-generation" products not specified in the California Action complaint would be at issue in the instant action. While the California Action Plaintiffs have repeatedly suggested that they will, at some time in the near future, amend their complaint to include infringement claims based on the '320 patent, the fact that such claims are not yet included in the California Action demonstrates that a straightforward application of the first-to-file rule is not as neat a fit as it was in Pacesetter or the other cases cited by Evans.

On the other hand, in urging that Evans should be enjoined from amending its complaint in the California Action to include infringement claims based on the '320 patent, AHP and Crown unduly downplay the close relationship between the

'550 patent and the '320 patent and how such affects claims regarding their validity and enforceability.   AHP and Crown also overlook the role that efficiency and equity play in deciding whether to entertain the instant declaratory judgment action.  Not surprisingly, AHP and Crown would have the Court construe the two patents as entirely distinct creatures, "each having a different set of claims, each having a different file history . . . , [with] the claims of each patent . . . subject to independent construction in view of the varied file history."  Plaintiff's Brief in Response to Defendant's Motion to Dismiss or Stay ("Plaintiff's Brief") at 3. However, the '320 patent was issued pursuant to a continuation application to the parent upon which the '550 patent was issued.  Thus, the application upon which the '320 patent was considered by the Patent Office to be for the same invention claimed in the parent application resulting in the '550 patent and to be based on the same disclosure, i.e., the continuation was deemed not to include anything which would constitute new matter if inserted in the parent application.  See MPEP § 201.07; Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555-57 (Fed. Cir. 1994).  There may some variation between parent and continuation applications in the scope of the subject matter claimed, Transco Prods., 38 F.3d at 555, and there is no question that the claims of the '320 and '550 patents are not identical.  Nonetheless, it cannot be plausibly argued that the two patents are not extremely alike.[6]  Accordingly, if this action were to go forward, this Court and the

_____

[6]In fact, AHP and Crown have adopted the position, for purposes of discovery in the California Action, that the definition of "patent-in-suit" in that action includes both the '550 and '320 patents.  AHP and Crown emphasize that they did so only as a precautionary measure to protect their rights in the California Action.  That may be so.  But it still undercuts their claim that the relationship between the two patents is such that it would allow for the simultaneous prosecution of independent actions without giving rise to duplicative litigation of issues.

California court would both have to address similar intricacies of relevant technology and prior art. See E.I. du Pont de Nemours & Co. v. Diamond Shamrock Corp., 522 F.Supp. 588, 591 (D. Del. 1981).

In that same vein, the Court also finds it significant that one of AHP and Crown's central claims in the instant action is that Evans is estopped to claim a construction of the '320 patent to cover or include any device or product manufactured, used, or sold by AHP and Crown, based on "the proceedings in the United States Patent and Trademark Office during the prosecution of the application and its parent application . . . ." Alabama Action Complaint at ¶ 11 (emphasis added). Thus, it is apparent that AHP and Crown assert a claim of prosecution history estoppel[7] against Evans, which implicates an examination not only of the prosecution history of the '320 patent application, but also its parent application, upon which the '550 patent was issued. See Mark I Marketing Corp. v. Donnelley & Sons, 66 F.3d 285, 291 (Fed. Cir. 1995); Jonsson v. Stanley Works, 903 F.2d 812, 818 (Fed. Cir. 1990). Indeed, counsel for AHP and Crown has affirmatively asserted to opposing counsel that his clients' estoppel claims regarding the validity of the '320 patent relate to the prosecution of the parent application for the '550 patent. See Plaintiff's Ex. 16 (Letter dated February 23, 2001 from AHP and Crown's counsel to counsel for the California Action Plaintiffs) at 2 ("The case law is clear that the estoppel from a parent application carries over to the continuation application," citing Mark I Marketing). So even to the extent that

---

[7]Prosecution history estoppel precludes a patentee from obtaining in an infringement suit patent protection for subject matter that it relinquished during prosecution in order to obtain allowance of the claims, serving as a check on the applicability of the doctrine of equivalents. Mark I Marketing Corp. v. Donnelley & Sons Co., 66 F.3d 285, 291 (Fed. Cir. 1995).

claims relating to the two patents are otherwise legally separable, this Court would still have to make an intimate examination of the claims and prosecutions leading to the issuance of both patents to resolve a claim of estoppel.

The Court finds that efficiency considerations weigh heavily in favor of dismissing this action to allow the California court in the first-filed action to resolve all disputes between the parties relating to the '550 and '320 patents. Technically speaking, AHP and Crown may be correct that the instant action is the "first filed" with respect to the '320 patent, at least at the present time.[8] However, it would appear that, given the kinship between the '550 and '320 patents, the claims AHP and Crown raise in this action appear to be easily consolidated with the closely related litigation in California that includes the same parties.

---

[8]Should the California Action Plaintiffs amend their complaint to include infringement claims based on the '320 patent, there is a possibility, however, that such claims would relate back to the date of the filing of the original complaint under Fed. R. Civ. P. 15(c)(2), in which case such amended claims would likely have priority for purposes of the first filing rule. See, e.g., Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp., 87 F.R.D. 398 (W.D. N.Y. 1980); Cosden Oil & Chemical Co. v. Foster Grant Co., 432 F.Supp. 956, 960 (D. Del. 1977), aff'd sub nom. mem. Cosden Oil & Chemical Co. v. American Hoechs Corp., 577 F.2d 725 (table) (3rd Cir. 1978); Telephonics v. Lindy & Co., 192 F.Supp. 407, 411 (E.D. N.Y. 1960), aff'd 291 F.2d 445 (2nd Cir. 1961);Applied Vision, Inc. v. Optical Coating Laboratory, Inc., 1997 WL 601425, *3-*4 (N.D. Cal. 1997). It is by no means certain that such amendments would relate back.. See Illinois Tool Works, Inc. v. Foster Grant Co., 395 F.Supp. 234, 250-51 (N.D. Ill. 1974), aff'd 547 F.2d 1300 (7th Cir. 1976); Higgins, Inc. v. Kiekhaefer Corp., 246 F.Supp. 610 (D. Wis. 1965). But according to the evidence before this Court, no such amendment to the California Action complaint has been filed, so any pronouncement by this Court as to the effect such an amendment might have would be merely advisory. Indeed, should such an amendment be filed in the California Action, this Court believes it would be the responsibility of the district court in that action, rather than this Court, to interpret whether such related back to the date of the original complaint and whether such indicated that other federal actions should be enjoined. See, e.g., Hooker; Cosden, supra. But the possibility that the district court in the California Action might rule, given the chance, that amended claims alleging infringement of the '320 patent relate back to before the filing date of the instant action is an additional consideration weighing against entertaining the instant declaratory judgment action at this time.

The Court also finds that additional equitable considerations weigh against the Court entertaining the instant action. It would appear that AHP and Crown may not have filed in this forum exclusively because they desired a prompt determination of their rights with respect to their right to sell products that potentially infringed upon the '320 patent. If they had wanted the most immediate resolution of that issue, they could have simply filed a counterclaim for a declaratory judgment in the closely related, and earlier filed, California Action. Thus, it would seem that AHP and Crown have been motivated to file here for other reasons, including perhaps the possibility of gaining leverage in the California Action, either with respect to settlement or in hopes that all claims against them regarding the two patents will eventually be heard in an Alabama federal forum. If the California court rules that the claims against AHP and Crown should be heard in an Alabama venue under 28 U.S.C. § 1404(a), then so be it. See <u>Kerotest</u>, 72 U.S. at 186. However, this Court will not entertain an action resulting in needless duplicative litigation simply because AHP and Crown consider the California forum to be inconvenient.

## III. CONCLUSION

Based on the foregoing considerations of efficiency and equity, the Court finds that Evans's motion to dismiss (Doc. 7) is due to be granted at this time. As this action will be DISMISSED without prejudice, AHP and Crown's motions seeking injunctive relief (Doc's 1 and 9) are MOOT. A separate order will be entered.

**IT IS SO ORDERED**, this ____4th____ day of April, 2001.


H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE